The next case this morning is 523-1256, People v. Drake. Arguing for the appellant is Victoria Rose. Arguing for the appellee is Sharon Shanahan. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning. Morning. Good morning, Your Honor. Ms. Rose, if you're ready to proceed, you may begin. Thank you. Good morning. May it please the court. My name is Victoria Rose, and I represent Deontay Drake in this appeal. Today, I would like to focus on Argument 1 of the brief, in which I argue that several evidentiary errors work together to deny Drake his right to a fair trial. But I am also happy to answer any questions you have about Argument 2 regarding trial counsel's failure to challenge Drake's 55-year sentence under the Proportionate Penalties Clause. Deontay Drake openly admitted at trial that he shot and killed Stoney Adams. The only question for the jury was whether Drake shot Adams in self-defense. Instead of letting the jury decide that question based on the law and the evidence, the state steered the jury toward a verdict based on emotion and prejudice. It painted a vivid picture for the jury. Drake was a violent teenager who glorified crime, while Adams was a blameless father tragically taken from his family. Three errors working together allowed the state to push this improper narrative and deny Drake his right to a fair trial. First, the trial court allowed the state to present two highly prejudicial photos of Drake. The photos show Drake in a backwards baseball cap, leaning out of a car, smoking, and casually holding a gun. The photos were taken several weeks before the incident. Drake objected to the admission of these photos because they were completely irrelevant. In response, the state argued that they were relevant to show that he owned the gun used to shoot Adams, but Drake admitted to that. Question for the jury wasn't who pulled the trigger or what gun was used, but why he fired. These photos of Drake did not make the matter in dispute whether he shot in self-defense more or less probable. Instead, they invited the jury to convict Drake not based on what happened on the night of the And even if these photos had any relevancy, relevant evidence is still inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. And here, any probative value was minimal, at best, while the prejudicial impact was enormous. These photos suggested- Oh, let me stop for a second. Did Drake deny owning the gun? No, he did not deny. He openly admitted at trial that it was his gun. Right. But these photos suggested- I'm sorry. At the investigation of the incident, did he deny having owned the gun for very long? He initially told police that he had only owned the gun for 24 hours, but later admitted that that was a lie. When did he later admit that? I'm not sure if he admitted it during his interview with police, but he definitely admitted it at trial in his testimony. And how much earlier than 24 hours from the time he said he just purchased the gun were those pictures? They were taken a few weeks before the incident. Okay, so is it improper for the state to use that to impeach his credibility? Perhaps. If Drake had gone up on the stand and continued to say that he had only owned the gun for 24 hours, maybe it would have been proper for impeachment. But it didn't make the matter in dispute whether or not he shot in self-defense more or less probable. And these photos suggested, without saying a word, that Drake was someone dangerous, criminal, and not to be believed. So this court has seen this issue before. In Banks, Harris, and Briggs- That's an abuse standard, isn't it, to admit that photograph? Yes, Your Honor, that's correct. So how is smoking a cigarette somehow wrong? How is that portraying him in a bad light? It's not clear whether or not it is a cigarette. It could be cannabis. A jury might suspect that it's cannabis, especially considering that Drake is a teenager in the photos. So that, you know, goes towards that image of Drake, of someone who glorifies crime and criminal activity. But in Banks, Harris, and Briggs, this court reversed and remanded where the state introduced photos of defendants posing with guns and smoking. In each of those cases, this court held that where identity or possession is not an issue, the danger of unfair prejudice overwhelms the minimal appropriate value. So this court should reach the same conclusion in Drake's case. And the error is fully preserved. And where the case turned entirely on whether or not the jury found Drake's testimony to be credible, the state cannot show that it was harmless. Now, the second error. In contrast to these photos of Drake, the state showed the jury a photo of Adams holding his young daughter and smiling at her in front of a pink happy birthday banner. The photo was used during the presentation of the life and death witness to identify Adams. But it's evident that this photo was chosen for its emotional impact, not because it clearly portrayed Adams when he was alive. Adams' daughter is at the center of the photo, not Adams, and his face is turned toward his daughter, not the camera. This photo wasn't only used during the life and death witness testimony. During closing arguments... Did the pose that Adams struck in that picture inhibit identification of him? I don't believe it inhibited identification. His mother was still able to give him the stand and confirm that that was what Adams looked like when he was alive. So, no. But during closing arguments, the prosecutor told the jury, Stoney ain't going for a knife. You saw the picture of him with his little girl. Here, I'll pull it out. And it showed the jury the photo of Adams again. But the photo of Adams with his daughter had no bearing on whether Drake shot in self-defense. It was a deliberate play to the jury's sympathies, invoking the idea that a caring father like Adams couldn't possibly have been reaching for a weapon. And worse, it reminded the jury, right before deliberations, that Drake's actions took a father away from a little girl. This error was not preserved, but trial counsel's failure to object to the photo and its improper use during closing constituted ineffective assistance. Counsel has a duty to keep... I'm sorry, I keep interrupting. With regard to the suggestion that the reason in closing he brought that out, wasn't there some suggestion that the unlikelihood of Mr. Adams reaching for a knife was due to the fact that he was of a smaller stature and that he had some issues with his hand? And that a knife fight might not necessarily end the way he would have liked, as opposed to, well, he's got a kid to go home to? Your Honor, I believe the state did allude to that later in its closing argument. But the photo doesn't even show Adams' entire body. It cuts off at the knees. And with the angle, you really can't tell how large or small his stature is from the photo. And you can't see his injured hand in the photo either. So it really doesn't go to that at all. But as I was saying, this constituted ineffective assistance because counsel does have a duty to keep inflammatory and irrelevant evidence like this out, especially in a closed case hinging on credibility. And finally, the third error, the trial court excluded powerful lynch evidence that supported Drake's self-defense claim. Drake sought to introduce evidence of Adams' 2015 reckless discharge of a firearm charge. A police report indicated that Adams was seen shooting a gun into the air near a crowd of people at the same time and place that someone had been shot and killed. And though the charge was dropped, Drake had an eyewitness willing to testify that she saw Adams shooting the gun. The court said this evidence couldn't come in because there was no conviction and it didn't want to deal with a trial within a trial. But the law is clear. A defendant claiming self-defense is entitled to introduce evidence of a victim's prior acts of violence, even without a conviction, so long as an eyewitness is available to testify. And Drake had one. This evidence was highly probative of whether Adams was the aggressor in the shooting. Defense counsel suggested to the jury that Adams did have a gun that he was reaching for when Drake fired. And Binder-Singleton got rid of the gun after the fact. Had the jury known that Adams had a history of gun-related crime, this theory would have been a lot more believable. And this error was fully preserved. And where the error deprived the jury of critical evidence that would have supported Drake's version of events, the state cannot show it was harmless. So let me ask you this. Drake admitted that he did not know Adams prior to this encounter, is that correct? That's correct, Your Honor. And so does it matter that Drake would have had no idea whether or not Adams was a violent person before he shot him? So there are two types of lynch evidence that can come in. And for the second type, it does matter whether or not the person shooting knew of the victim's violent past. But for this type of evidence, no, it just goes to whether or not it's more likely that Adams actually was reaching for a gun when he fired. It doesn't matter that Drake didn't know about that. So that is why I asked this court to reverse Drake's conviction and remand for a new trial where the jury reaches a verdict based on the evidence and is not improperly swayed by prejudice and sympathy. And pursuant to argument two, I ask that this court remand for a new sentencing hearing. Thank you. Justice Moore, any questions? No questions. All right. Thank you. You'll have time to reply. Ms. Shanahan. Yes, Your Honor. May it please the court, counsel. My name is Sharon Shanahan, and I represent the people of the state of Illinois. Defendant raises three issues, which he says together make cumulative error. And as our Supreme Court has recently stated, if a defendant raises several errors, but only one is error, there can be no cumulative error. So should this court deny even one of these claims, then there is no cumulative error. That's People v. Casita, 2024, Illinois, 128805, paragraph 45. So first of all, the pictures of the gun. The defendant says that he would have stipulated, but the state doesn't have to agree to stipulate. We cite several cases that say that the prosecution is not disabled at trial from proving every element of the charge defense and every relevant fact, even though the defendant fails to contest an issue or is willing to stipulate a fact. Shanahan, you're locked up again. Hold on one second. See if you come back. Ms. Rose, we had this problem earlier with Shanahan's computer connection or internet connection. So I apologize if we periodically stop. All right, Ms. Shanahan, you're back. I just wanted to show you, this is my internet guy's business card. It won't happen again. Well, don't make promises. At least I will do my very best. Right, right. So did you hear when I told you that you had stopped? Yes, I heard you say I was locked. All right. So I had just started on the pictures of the gun and said that the state, the Supreme Court has said that the state doesn't have to stipulate. They did have to prove that the defendant possessed the gun. The defendant says that it showed him holding the gun in a casual manner, somehow intimating that this makes it worse, and yet cites people versus breaks in which the defendant was holding the gun in a menacing manner. Moreover, in breaks, there was no evidence that connected the defendant to the gun, whereas here, most definitely defendant, this was defense gun. He admitted it was his gun. He did lie about how long he had owned this gun. He said he'd only owned it 24 hours. And Your Honor, I agree with you that this is important. If a defendant is lying, that's an important thing for the court to know. If he lies about whether he owned the gun or how long he owned the gun, then he might also lie about why he shot Stoney, which the jury is entitled to know. And as far as the cigarette, I mean, a cigarette's a cigarette. It wasn't raised at trial. If nobody mentioned it until this appeal that it might be marijuana, it's hard to imagine that simply having a cigarette in your hand would have had any effect on whether this jury would have convicted the defendant at all. And I believe, Justice Moore, you mentioned that this is an abuse of discretion standard for all of these issues. And I think that's extremely important. This judge very definitely rejected the two dozen pictures that the state wanted to present to establish the defendant's general fascination with guns. I mean, they had two dozen. The judge said, no, two. And these are just two. The defendant put them in the brief. You can see them. It's just the defendant holding a gun. It's pointed down. It's not in any way threatening. So could the judge have done it the other way? Well, doubt. Maybe. But is this way an abuse of discretion? This is just the opposite. When a judge looks at two dozen pictures and says, I will allow you two that are not menacing, that show the defendant fabricated facts and established that the defendant owned a murder weapon, that's a thoughtful and properly exercised use of discretion to allow the two pictures. As far as the life photo goes, as is normally the case, Mrs. Adams was, if not the first, then one of the first pictures. And here's the entire transcript. Is the man depicted in this photo, is that Stoney Adams? Answer, yes. Now, I don't know about this court or opposing counsel, but I have an adult son. And I can guarantee you that the only pictures I have of him are at Christmas and birthdays. I mean, that's when you're with your adult child, unless they live with you, is when they're at some kind of an occasion. So it's not surprising that the only recent picture Mrs. Adams had of her son was this and more may be taken at this point. She doesn't say it's the baby's birthday. She doesn't say it's Stoney's birthday. She doesn't even say this is Stoney's child. That's all she said. Is this Stoney? Yes. So it was not, defendant says that this was not elicited incidentally and that it was doubtlessly chosen because the defendant's daughter was in the picture. You're breaking up again. No, I'm sorry. Defendant says it's not listed incidentally and it was doubtlessly chosen because the defendant's daughter was in the picture. And there's absolutely no evidence to support that. It is simply defendant, a recent picture of defendant, which is what you want. He's holding a child and there was no effort by this state to do this intentionally to invoke sympathy by the court. As far as the rebuttal goes, the defense counsel, and this was rebuttal, not the closing argument. The defendant said that Stoney had a three-inch knife, which theoretically could have been a deadly weapon. And in rebuttal, the prosecutor sought to refute any idea that Stoney was the aggressor by pointing out that Stoney was, and here I quote, a little guy with a bad hand with little ability to defend himself. And he showed the jury the picture to emphasize Stoney's small stature. In my opinion, you can see Stoney's bad hand in that picture. The fact that the picture doesn't show him from the knees down doesn't mean that it's not material for how big he was. You can tell he was a limited person. And then as far as the lynch hearing goes, again, this is an abuse of discretion standard. The trial court chose to admit one of defendant's prior crimes and not admit this one. This charge was seven years old. Now, we're not going to get. You're frozen again. When you come back, you might want to address the fact that you said that they allowed one charge of the defendants. I think you were referring to the victim's charges. Is that correct? Yes, your honor. I misspoke. So again, this is an abuse of discretion standard. And this happened seven years before this crime. And as defendant argues in the second issue, you're supposed to get older and wiser. And I think that's why the seven years is important. Stoney had not been charged with any crimes for seven years. And so he was eight, excuse me, it had been seven years since he'd been charged for this, and he'd had no conviction since then. As far as the chart itself, this was apparently a fairly chaotic scene. And there were a series of violent incidents. And the state decided that the charges should be dismissed. That is in the state's motion in limine, a verb that the charges were dismissed. At most, the defendant fired a gun in the air, not at anyone, but up in the air. That's the most that could be said about this. Now, this trial court looked at how long ago it was, looked at the other crimes, and considered the arguments, and decided that it wouldn't let this seven-year-old charge into, to use against arrest proof that Stoney was a violent person, had violent propensities, I believe is the state law. And finally, I would note that there were like seven people charged in this crime that Stoney allegedly was involved in. And the trial court said, well, if we let this person in to say Stoney fired in the air, then we're going to have, then the state's going to come right back with the other people and say, well, this happened, that happened. And there would be a factual mess and a trial within a trial. And considering that, along with the other things, the trial court did not abuse its discretion in deciding not to admit this crime. And I know I've gone over my time. I appreciate your tolerance. All right, thank you. Ms. Rose, do you have time to reply? Yeah, I have just a couple of points in response. So first, the state is correct that it did not have to agree to a stipulation regarding Drake's ownership of the gun. But the case law states that the state is entitled to prove every element of the charge defense and every relevant fact. The fact that Drake possessed a gun several weeks before the offense does not make it more or less likely that he shot Adams in self-defense. He couldn't have planned the shooting considering he didn't know Adams and didn't expect to see him in the parking lot that night. So it's completely irrelevant. And it's true that Drake is not holding on to any menacing evidence. Ms. Rose, hold on one second, please. Your microphone seemed to have cut out there. We're just having all sorts of technical difficulties today. Ms. Shannon is happy to see it happen to someone other than herself right now. I am, I am. I'm sorry. Can you hear me? Yes, you're back. Okay. Sorry about that. Thank you. It's true that Drake is not holding the gun in a menacing manner in the photos, but that does not negate the prejudicial impact. The way he's casually posing with a gun suggests a familiarity with firearms and goes to that image of someone who glorifies crime. He doesn't need to be pointing the gun at the camera for the photo to be damaging to his credibility. And I also agree that the jury was entitled to know that Drake lied about how long he owned the gun. But it did know this. Drake admitted in his testimony that he initially lied about this. That's on page 450 and 451 of the record. The probative value of these photos was just so minimal compared to their huge prejudicial effects. They should not come in. Regarding the photo of Adams, it seems incredibly unlikely that this photo was the only photo the state could get of Adams. Adams was young. Most young people have photos of themselves floating around. And he had several convictions on his record. So at the very least, his booking photo could have been used. Probably not what the state would have chosen for the victim in this case. Probably not, no. But they could have cropped out his daughter from the photo. And the booking charge would have been seven, if there were a photo of that, that would have been seven years prior to this, I'm assuming, is a more recent photo. Is that correct? That's a fair point, your honor. We can speculate there's a whole bunch of different pictures out there. Possibly, Drake might have had some pictures without him holding guns that could have been used as well.  Okay. But at the very least, his daughter could have been cropped out of the photo. This particular photo was chosen because his daughter is at the center of it. And while the fact that Adams was a father wasn't brought up during the life and death witness testimony, it was brought up in rebuttal. The prosecutor said, you saw the photo of him with his little girl. Here, I'll show you. And then the prosecutor does go on to talk about how Adams was disabled. But the way it's presented, it's clear that that's not why the photo was shown. The transcript says, you saw the picture of him with his little girl. Here, I'll pull it out. He's not a victim. More importantly, Stoney is a disabled guy, his dominant hand. The fact that the prosecutor says, more importantly, seems to imply that that's not why the photo was shown. That's a separate issue. And then regarding the Lynch evidence, the court refused to admit some of Adams' past convictions and charges because they were too old. That's the reason this court stated. But the reason for not admitting this evidence was because it was too much of a trial within a trial, or created too much of a danger of that. Courts have routinely admitted evidence of acts of violence that are seven years old or older. And the state argues today that Adams shot a gun into the air, and that's the most that could be said about this. But we don't know that. There was an eyewitness who was willing to testify and could have provided more detail on exactly what happened. And had Drake been able to present this witness, maybe the state would have brought their own witnesses to testify in response. We don't know that. The state never indicated that. But it could have happened, and it could have been a pain to deal with. But even if it led to a trial within a trial, Drake was entitled to present this evidence. It was highly relevant to his claim of self-defense. The bottom line is, he saw what happened right before he shot Adams. Therefore, the success of his claim hinged entirely on whether the jury found his narrative of the shooting to be credible. These three errors painted Drake as a no-good teenager who glorified crime, and Adams was a caring father who would never be the aggressor. And this drastically undermined Drake's credibility and the fairness of this trial. And for all these reasons, I ask that this court reverse Drake's conviction and remand for a new trial. Thank you. Justice Moore, any questions? No questions. All right. Thank you very much, Ms. Rose and Ms. Shanahan, for your briefs and for your arguments here today. The court will take the matter under consideration, and we will issue our ruling in due course. You guys have a good rest of your day. Thank you, Your Honor. Thank you.